JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

13-cv-3395

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

ER

13 3395

**I. (a) PLAINTIFFS**
Ileana Ionascu

**(b)** County of Residence of First Listed Plaintiff Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Doris J Dabrowski, attorney at law
1525 Locust St. 14th floor
Philadelphia Pa. 19102 #21714

**DEFENDANTS**
Philadelphia University

County of Residence of First Listed Defendant Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 42 U.S.C. §2000e
Brief description of cause: discrimination based on sex + national origin; violation of Equal Pay Act

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. DEMAND $ CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE DOCKET NUMBER

JUN 18 2013

DATE 6/14/13 SIGNATURE OF ATTORNEY OF RECORD Doris J Dabrowski

FOR OFFICE USE ONLY

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

ER

13 3395

Address of Plaintiff: 200 West Elm St., Apt. 1405, Conshohocken, Pa. 19428

Address of Defendant: 4201 Henry Ave., Philadelphia, Pa. 19144

Place of Accident, Incident or Transaction: Philadelphia, Pa.
(*Use Reverse Side For Additional Space*)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes☐ No☒

Does this case involve multidistrict litigation possibilities? Yes☐ No☒

*RELATED CASE, IF ANY*:
Case Number: ______ Judge ______ Date Terminated: ______

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes☐ No☒
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes☐ No☒
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court? Yes☐ No☒
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) ______

B. *Diversity Jurisdiction Cases*:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) ______

## ARBITRATION CERTIFICATION
(*Check Appropriate Category*)

I, [signature], counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: 6/14/13 [signature] Attorney-at-Law 21714 Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

JUN 18 2013

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

DATE: 6/14/13 [signature] Attorney-at-Law 21714 Attorney I.D.#

ER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Ileana Ionascu : CIVIL ACTION

v.

Philadelphia University

NO. 13 3395

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| 6/14/13 | [signature] | |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| 215-790-1115 | 215-790-0628 | dabrowskid@verizon.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JUN 18 2013

ER #400

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

ILEANA IONASCU
Plaintiff

vs.

PHILADELPHIA UNIVERSITY

CIVIL ACTION

NO. 13 3395

COMPLAINT AND JURY DEMAND

COUNT I

INTRODUCTORY STATEMENT

1. Pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §2000e and the Equal Pay Act, Plaintiff, Dr. Ileana Ionascu, seeks relief for discrimination on the basis of sex and national origin. Plaintiff invokes this Court's supplemental jurisdiction to seek redress for discrimination in violation of the Pennsylvania Human Relations Act (PHRA), for violation of her employment contract. Plaintiff's sex and national origin were motivating factors for Defendant's decision to deny Plaintiff tenure and to terminate her employment, and to pay her less than comparable male assistant professors. In the process of considering Plaintiff's application for tenure, Defendants violated terms of the faculty handbook, incorporated into an express employment agreement between the parties. Plaintiff seeks declaratory relief, reinstatement, promotion with tenure, back pay, front pay, compensatory and punitive damages, liquidated damages authorized by the Equal Pay Act, attorney's fees and costs.

JURISDICTION

2. Pursuant to 28 U.S.C. §§1331 and 1343, the United States District Court has jurisdiction over this case arising under following laws of the United States: Title VII of the Civil Rights Act, 42 U.S.C. §2000e, et. seq., and the Equal Pay Act, 29 U.S.C. §206(d).. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims arising under the Pennsylvania Human Relations Act and the common law of contracts.

3. Pursuant to 28 U.S.C.§1391, venue lies in the Eastern District of Pennsylvania , where the employment practices occurred.

4. Plaintiff exhausted administrative remedies by filing a charge of discrimination on August 31, 2011. with the Equal Employment Opportunity Commission (EEOC) and by cross-

filing the charge with the Pennsylvania Human Relations Commission. The EEOC issued a notice of right to sue on March 20, 2013, a copy of which is attached hereto as Exhibit A.

PARTIES

5. Plaintiff, Dr. Ileana Ionascu, is an adult female residing at 200 West Elm Street, Apartment, 1405, Conshohocken, Montgomery County, Pennsylvania 19428. Plaintiff is a native of Romania.

6. Defendant, Philadelphia University, a non-profit corporation (educational) affecting interstate commerce maintains its administrative office at 4201 Henry Avenue, Philadelphia, Pa. 19144. Defendant has employed more than 15 persons in each working day in each of the 20 weeks in the current or preceding calendar year.

STATEMENT OF FACTS

7. Defendant employed Plaintiff as an assistant professor of mathematics pursuant to tenure track contracts beginning in August, 2005.

8. Plaintiff's contract of employment is subject to the University's guidelines on tenure and promotion described in the Faculty Manual. A copy of the contract between Plaintiff and Defendant in effect for the academic years beginning in 2009 and 2010 is attached hereto as Exhibit B.

9. On March 14, 2011, Stephen Spinelli, Jr., President of Philadelphia University, notified Plaintiff of the denial of tenure and that Plaintiff would receive a terminal contract for the 2011-2012 academic year. President Spinelli gave no explanation for the decision as required by §2.4.2 of the Faculty Manual, pertinent sections of which are attached as Exhibit C.

10 Pursuant to §2.5.5 of the Faculty Manual, candidates for tenure must demonstrate satisfactory performance in professional achievement and in contributions to the University and School, with excellence in one of these two criteria. According to the §2.5.5.A 3 of the Faculty Manual, attached as Exhibit C, professional achievement includes: research and publication, presentation of papers at professional or industrial meetings, leadership in professional organizations, consulting, other concrete contributions to one's profession. Published research

demonstrating original contributions to the field are major vehicles for evaluating tenure candidates.

11. In September, 2010, Plaintiff submitted her dossier for tenure and promotion to the rank of associate professor.

12. The University Faculty personnel committee voted unanimously to support Plaintiff's application for promotion and tenure based on credentials, excellence in teaching, continued and significant scholarship and exceptional service to the University,

13 Noting that Plaintiff is among the highest rated mathematics faculty, active scholarship and highly active service, Matt Dane Baker, Dean of the School of Science and Health, recommended Plaintiff for promotion and tenure.

14. The Personnel Committee of the School of Science and Health, by majority vote, did not recommend Plaintiff for tenure because Plaintiff did not have two refereed publications during an evaluation period.

15. The Personnel Committee acknowledged that the acceptance of two articles was not a fixed standard, but that it had been a previous school standard no longer in effect.

16. The Faculty Manual, incorporated into Plaintiff's contract, does not require the publication of two articles during any period of time.

17. Prior to the disclosure of the Personnel Committee's action, Defendant did not inform Plaintiff that the publication of two refereed journal articles during the time of her appointment as assistant professor is a prerequisite for tenure.

18. Defendant rated Plaintiff's professional development as very good for the years between 2005 and 2009 inclusive.

19. The Provost, Randy Swearer, recommended the denial of tenure because of a false allegation that Plaintiff's professional development does not meet college requirements. The Provost falsely stated that Plaintiff's second journal article was in the early stages of development and concluded that the likelihood of actively pursuing research in the future is low.

20 Contrary to the Provost's statement, two of Plaintiff's publications were accepted in a peer-reviewed journal in 2010 and Plaintiff otherwise met all the requirements published in the Faculty Manual.

21. The Provost disparaged the journal which accepted Plaintiff's publication because it is published in Croatia. He questioned the journal's quality without confirming facts.

22. The Provost informed the president that conferences, the award of research grants does not evidence research by Plaintiff. He undermined the value of Plaintiff's presentations at scholarly meetings because publications are noteworthy and disseminated to a wider audience. Although the Promotion and Tenure Committee characterized her service as excellent, the Provost disparaged her service as merely adequate.

23. Defendant held Plaintiff to a standard higher than the standard applied to an American-born male to whom Defendant granted tenure in 2011 in the School of Science and Health. Defendant credited the American-born male for three government technical reports which are not published in peer-reviewed scholarly journals, securing external research funds, and an unspecified contribution to a book. While Plaintiff's research grants were viewed as attempts to support Plaintiff's research, research funding was cited as evidence of scholarly activity for male faculty members seeking promotions.

24. Defendant refused to submit Plaintiff's appeal to the Appeal Committee.

25. During the 2009-2011 academic years, Plaintiff's salary was $57,054.

26 During the 2011-2012 academic year, Plaintiff's salary was $58,700.

27. The average salary for all assistant professors is $61,600 in the year 2010-2011.

28. To the best of Plaintiff's knowledge, information and belief, Defendant paid her less than the amount paid to the average male assistant professor performing with same skill, effort and responsibility.

29. To the best of Plaintiff's knowledge, information and belief, the average salary of male associate professors exceeds that of female associate professors.

STATEMENT OF CLAIMS, COUNT I - TITLE VII

30. Plaintiff, a female born in Romania, satisfied all the criteria established in the Faculty Manual for promotion to the rank of associate professor and obtaining tenure at Philadelphia University.

31. Throughout her employment at Philadelphia University, Plaintiff was paid less than comparable males despite her very good to excellent performance, terminal degree in mathematics, experience as a faculty member, responsibilities and efforts on behalf of the University.

32. In violation of Title VII of the Civil Rights Act, Plaintiff's sex (female) and national origin (Romanian) were motivating factors for the denial of tenure and promotion, the termination of Plaintiff from employment and the underpayment of salary to Plaintiff.

33. As a proximate result of Defendant's discrimination, Plaintiff lost pay and benefits, suffered losses of future compensation, and suffered pecuniary and non-pecuniary damages.

WHEREFORE, Plaintiff prays this Court to declare that Defendant violated Title VII of the Civil Rights Act in determining and paying Plaintiff's salary and in denying her promotion and tenure, to order Defendant to reinstate Plaintiff and promote her to the rank of associate professor with tenure, to award her back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and to afford Plaintiff such other relief that may be equitable and just.

COUNT II - EQUAL PAY ACT

34. Plaintiff incorporates the averments of paragraphs 1 through 29 herein by reference.

35. During the course of her employment, Defendant wilfully paid Plaintiff a salary at a rate less than the rate at which it paid male assistant professors with doctoral degrees in positions requiring equal skill, effort and responsibility under similar working conditions.

36. Defendant wilfully pays female associate professors less than the amount it pays to male associate professors performing work requiring equal skill, effort and responsibility under similar conditions of employment.

WHEREFORE, Plaintiff prays this honorable Court to order Defendant to pay Plaintiff an amount equal to the difference between her salary and wages paid to male assistant professors performing equal work within the meaning of §6(d) of the Equal Pay Act, with interest, to order Defendant to pay Plaintiff an equal amount as liquidated damages, to award Plaintiff costs and attorney's fees, and to afford Plaintiff such other relief as the Court deems equitable and just.

COUNT III - PHRA

37. Plaintiff incorporates the averments of paragraphs 1 through 29 herein by reference.

38. The allegations of paragraphs 7 through 35 hereof constitute an unlawful discriminatory practice or unlawful practice in violation of the Pennsylvania Human Relations Act, (Act of October 27, 1955, P.L. 744, as amended, Section 5a).

WHEREFORE, Plaintiff prays this Court to declare that Defendant violated the Pennsylvania Human Relations Act in the determination and payment of Plaintiff's salary and in denying her promotion and tenure, to order Defendant to reinstate Plaintiff and promote her to the rank of associate professor with tenure, to award her back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and to afford Plaintiff such other relief that may be equitable and just.

COUNT IV - BREACH OF CONTRACT

39. Plaintiff incorporates the averments of paragraphs 1 through 29 herein by reference.

40. In the process of denying Plaintiff's application for promotion and tenure Defendant breached provisions of Plaintiff's employment contract which incorporates the Faculty Manual. Particular provisions of the Faculty Manual breached by Defendant in the course of denying her promotion and tenure include the following: failure to apply the standards of promotion specified in §2.42 and 2.5.5, failure of the President to disclose the reason for the denial of tenure and promotion as required by §2.4.2, and failure to consider Plaintiff's appeal pursuant to §2.4.2

41. In violation of the covenant of good faith and fair dealing implicit in her contract of employment, Defendant held Plaintiff to an undisclosed publication standard which had never been revealed to her prior to the review of her application for promotion and tenure. On the

contrary, Defendant had cited Plaintiff's grants, presentations, participation in conferences and meetings and progress on a paper as excellent progress in scholarship.

43. As a proximate result of Defendant's breach of the express terms of the Faculty Manual, incorporated into her contract, and of Defendant's breach of the covenant of good faith and fair dealing, Plaintiff was denied tenure and promotion to the rank of associate professor and the compensation of an associate professor. As a further proximate result of Defendant's breach and violation of the covenant of good faith and fair dealing, Plaintiff has incurred the expenses of searching for alternate employment and loss of future earning power.

WHEREFORE, Plaintiff prays this Court to declare her rights under her contract with Defendant and to award her damages for Defendant's breach of her contract of employment and for violation of the covenant of good faith and fair dealing.

JURY DEMAND: Plaintiff demands a trial by jury.

Respectfully submitted,

Doris Dabrowski, Attorney for Plaintiff, #21714
1525 Locust St., 14th floor
Philadelphia, Pa. 19102
215-790-1115
dabrowskid@verizon.net

orm 161 (11/09) U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Ileana Ionascu
200 West Elm Street
Apt. 1405
Conshohocken, PA 19428

From: Cleveland Field Office
EEOC, AJC Fed Bldg
1240 E 9th St, Ste 3001
Cleveland, OH 44199

[ ] On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2011-02825 | Ms. Blackmon, Investigator | (216) 522-2251 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

[signature]
Cynthia Stankiewicz,
Acting Director

MAR 20 2013
*(Date Mailed)*

Enclosures(s)

cc:

Kathryn H. Flannery
AVP for Human resources
PHILADELPHIA UNIVERSITY
4201 Henry Avenue
Philadelphia, PA 19144

Doris J. Dabrowski, Esq.
1525 Locust Street
14th Floor
Philadelphia, PA 19102

A



PHILADELPHIA
UNIVERSITY

June 26, 2009

Ileana Ionascu
515 West Chelten Avenue #1202
Philadelphia, PA 19144

Dear Ileana,

It is my pleasure to offer you a two-year appointment as assistant professor of Mathematics in the School of Science and Health at Philadelphia University for the 2009-2010/2010-2011 academic years. For reasons explained earlier this spring, your salary beginning September 1, 2009 will remain at the annual rate of $57,054. In this position, you are directly responsible to the dean of the School of Science and Health, for teaching and other assignments.

This is a tenure-track position subject to the duties and responsibilities assigned to you by the University, as well as the University's guidelines on tenure and promotion as more fully described in the Faculty Manual as amended from time to time, which you received previously. You also received a copy of the University's Employee Handbook, which more fully describes certain employment benefits and personnel policies of the University.

This letter constitutes the entire agreement and complete understanding of the parties and supersedes all previous or contemporaneous understandings. Moreover, no other promises or agreements regarding your employment are binding on the University unless reduced to writing and signed by myself on behalf of the University.

In the event the terms of the appointment are acceptable, please sign and date this letter, returning the signed original to the attention of Kathryn Flannery, assistant vice president for Human Resources, at the University's address.

At this time, I would like to thank you for your dedication and service to the University.

Best wishes,

Stephen Spinelli, Jr.

Stephen Spinelli, Jr., Ph.D.
President

Signature I. Ionascu Date 07/06/2009

OFFICE OF THE PRESIDENT

School House Lane & Henry Avenue, Philadelphia, PA 19144-5497
215-951-2970 • 215-951-2569 FAX • www.PhilaU.edu

B

President makes his or her recommendation to the Board of Trustees, which has final responsibility on individual cases.

**2.4.2 Criteria and Procedures -- Summary of Procedures**

Recommendations for advancement in rank originate with the schools. These recommendations are forwarded to the Faculty Personnel Committee for five- and seven-year contract faculty, or to the Tenure Committee for tenured faculty. After review, the recommendations of the Faculty Personnel Committee or the Tenure Committee are submitted to the Provost who, in turn, submits them with his/her recommendations to the President. Final approval of all promotions resides with the President and the Board of Trustees. Promotion to associate professor is awarded after the probationary period with the granting of tenure (tenure-track faculty) or with the granting of a five-year contract (renewable contract faculty).

Candidates whose requests for promotion have been denied at any procedural level are so notified in writing and given the reason for the decision. A procedure for appeal of an adverse decision is provided.

Criteria

The most significant factors measuring the excellence of a faculty member are judged to be:

A. Academic attainment as measured by degrees earned.

B. Experience relevant to the member's responsibilities.

C. Teaching effectiveness (Faculty approved classroom visitation policy on March 19, 1991). (See Appendix C.).

D. Professional activity in the member's current field.

E. Contributions to the University.

These criteria are arranged in order of consideration and each has a series of steps by which a faculty member is expected to rise to meet the expectations of the faculty rank for which he or she is being considered. However, it is noted that Criteria A and B are largely matters of fact; Criteria C, D and E involve judgment. Each criterion is discussed in greater detail below.

**A. Degrees.** (Earned at an accredited college or university). The indicated requirements are the normal minimum expectations for assignment to the stated ranks. The special requirements of a particular faculty post may justify a request for an exception. Appropriate terminal degrees for the various ranks may differ among disciplines and programs.

| | |
|---|---|
| Instructor: | Bachelor's or Master's Degree, depending upon the field. |
| Assistant Professor: | Appropriate terminal degree in the professional field or in an appropriate relevant field, or work well advanced toward this degree. |
| Associate Professor: | Appropriate terminal degree in the professional field or in appropriate relevant field. |
| Professor: | Appropriate terminal degree in the professional field or in appropriate relevant field. |

C-1

B. **Experience.** In equivalent years.

| | |
|---|---|
| Instructor: | No experience requirement |
| Assistant Professor: | Total of three or terminal degree |
| Associate Professor: | Total of eight or five in grade |
| Professor: | Total of fifteen or seven in grade |

Types of experience excluding concurrent experience are to be evaluated as follows:

| | Allowance | |
|---|---|---|
| Type | Factor | Maximum (yrs) |
| Full-time University teaching* | 1.0 | 15 |
| Adjunct appointment to PhilaU | .5 | 5 |
| Part-time college teaching | .25 | 5 |
| High School teaching | .5 | 5 |
| Relevant professional work | .5 | 5 |

* Full-time professional library work and full-time athletic coaching will be regarded as equal to full-time university teaching.

C. **Teaching Effectiveness.** Competence in teaching is the primary responsibility of any teacher. Outstanding performance in the classroom must be recognized and rewarded, indifferent teaching discouraged. Estimation of teaching effectiveness must consider the following factors.**

1. Ability to communicate information.
2. Evident interest in the subject taught.
3. Constant contact with advances in the subject fields.
4. Skill in designing and updating courses.
5. Rapport with students.
6. Effectiveness in use of reference materials and teaching aids.
7. Ability to develop and use meaningful testing methods.

** In professional library work and athletic coaching the phrase "teaching effectiveness" will be replaced by "performance effectiveness" with little change in the herein indicated measures.

D. **Professional Activity.** It is expected that all members of the faculty will continue their professional development; will make significant contributions to the advancement of their professions; and will, through their own curiosity and interest, continue to question, to investigate and to use their findings in the classroom. This will be measured by:

**For tenure track and tenured faculty**:

1. Professional development such as graduate study; special courses; attendance and participation in professional meetings, seminars, and conferences and continued surveillance of scholarly and professional publications.

C-2

2. Contributions to the profession, including membership and activities in professional societies; published scholarly reviews of significant areas of advancement; and consultation with educational, governmental, or industrial organizations. Professional review activities, including grant and publication reviews.

3. Original research demonstrated by publication; or creative contributions to art or literature, demonstrated by publication or juried exhibit.

**For renewable contract faculty:**

1. Professional development such as graduate study; special courses; attendance and participation in professional meetings, seminars, and conferences and continued surveillance of scholarly and professional publications.

2. Contributions to the profession, including membership and activities in professional societies; published professional reviews of significant areas of advancement; and consultation with educational, governmental, or industrial organizations. Professional review activities, including grant, publication and professional competition reviews.

3. Regular and sustained practice in the field. Maintenance of certification or licensure as required by the profession.

4. Although not required for personnel assessment or advancement, evidence of applied research may be considered, if the candidate so desires.

**E. Contributions to the University.** Candidates for promotion are expected to have made exceptional contributions to the well-being and advancement of the University. Measures of contribution to the University include:

1. Service on committees or in administrative functions.
2. Attendance at meetings and convocations called by the University.
3. Advising students or student activities.
4. Speaking as a member of the University to schools, clubs, business or government agencies and presentations to news media.
5. Responsible participation in community activities.
6. Effective efforts in fund-raising or in student recruiting.
7. Program development and assessment.

**Procedures (See Appendix A for a detailed outline of procedures.)**

On or before November 1, a candidate for promotion shall submit a dossier to the school dean. The dossier should be reviewed with the dean before submission. The dossier must contain the information required by Philadelphia University as well as any other information the candidate deems important for

C-3

the promotion deliberations. The following is a list of required information that must be submitted in the dossier.

1. An updated resume.
2. A statement supporting presumed qualifications for promotion.
3. Evidence of quality teaching, e.g., course outlines and examinations, including a list of course taught since last promotion.
4. A summary of student evaluations since the last promotion.
5. A determination of the years of experience since last promotion.
6. Portfolio of professional work, e.g., published material, exhibited work, presentations, conferences attended, evidence of professional practice and professional community work, etc.
7. Copies of current certification or license, if applicable.
8. A complete list of University-related activities such as service and positions held on committees, administrative duties, school responsibilities, etc. since last promotion.

In addition to the candidate's dossier, a supplemental folder is assembled. This folder contains confidential documents, many of which are not available to the candidate. These documents include the evaluations from external assessors (if required), the dean's evaluation, the program director's evaluation (if appropriate), the SPC recommendation, the FPC or Tenure Committee recommendation, the Provost recommendation and the President's notification letter to the candidate.

**The Candidate's School**

By no later than November 1, a candidate's dossier will be made available for review by tenured faculty and faculty holding 5/7-year contracts of the candidate's school.

By no later than November 15, the faculty who either hold tenure or 5/7-year contracts (except dean and program director) shall submit typed peer evaluations in signed envelopes of each candidate up for promotion to the School Personnel Committee (SPC).

The SPC will open each peer evaluation and discard the signed envelope immediately. The chair of the SPC will assemble the peer evaluations and produce a set of photocopies. Because of the confidential nature of these documents, only the chair of the SPC will make these copies. One of these sets is kept in the school office for examination by the candidate, the dean, the program director, the SPC, and the tenured or 5/7-year contract faculty of the school, who shall have them available by November 20. This set should not leave the school office. It will become part of the candidate's school personnel file. The second set is retained for submission to the university Faculty Personnel Committee (FPC) or the Tenure Committee, and will eventually become part of the candidate's personnel file in the Office of the Provost.

The candidate's school dean (and if appropriate the program director) shall submit a written evaluation of the candidate to the chair of the SPC. The written evaluations shall make a positive or negative recommendation on awarding of the promotion, and should address issues relevant to this consideration including, but not limited, to teaching ability, academic credentials, university service, and professional development. The chair of the SPC will summarize the evaluations of the candidate and

C-4

place these summaries in the candidate's dossier by November 20. The original dean and program director evaluations are placed in a confidential supplemental folder and are not made available to the candidate.

The candidate shall have an opportunity to review copies of the peer evaluations and the summaries of the dean and program director evaluations, and the opportunity to respond in writing, addressing the submission to the SPC. This response, which can address any issue raised within the peer evaluations or the summaries of the dean and program director evaluations, must be submitted by December 1. Once submitted, the response is considered part of the candidate's personnel file, along with the peer evaluations, program director's evaluation, and dean's assessment. As such, it will be conveyed to the FPC or the Tenure Committee, and to the Office of the Provost and the President's office, during the later stages of the evaluative process. The written evaluations shall make a positive or negative recommendation on awarding of the promotion and should address issues relevant to this consideration including, but not limited to, teaching ability, academic credentials, university service, and professional development. The above method of providing envelope signatures with peer evaluations is to be a minimum standard for all schools in the University.

Between December 1 and February 1, an SPC consideration meeting shall be scheduled and chaired by the chair of the SPC. At a subsequent hearing, the SPC shall vote by secret ballot on their recommendations for awarding the promotion. This recommendation will be added to the candidate's confidential supplemental folder (which is not available to the candidate) and provided to the dean of the school.

By no later than February 1, the promotion vote results from the school, together with the school's written peer evaluations, a summary report of the findings of the faculty prepared by the chair of the SPC, and the recommendation(s) of the school dean (and program director when appropriate) must be submitted to the Provost. The Provost shall inform the candidate as to whether the promotion recommendation from the school was favorable or unfavorable. The Provost shall immediately forward the candidate's complete dossier and personnel file to the Faculty Personnel Committee (FPC) or to the Tenure Committee.

**The Faculty Personnel Committee (FPC) or the Tenure Committee**

Between February 1 and March 1, the FPC or the Tenure Committee will review the entire dossier, written peer evaluations, the recommendation of the SPC, and the recommendation(s) of the school dean and program director. The materials set forth above will be made available to FPC or Tenure Committee members in advance of the first scheduled meeting to discuss the candidate. There shall be as many meetings as are necessary to fully evaluate a candidate's qualifications for awarding the promotion. At a subsequent meeting, a secret ballot will be taken.

C-5

On or before March 1, the FPC or the Tenure Committeeshall forward the result of the promotion vote in writing to the Provost with a separate written evaluation of the candidate's qualifications or lack of qualifications for the promotion. The FPC or the Tenure Committee may request that the school dean and/or the chair of the School Personnel Committee provide additional information concerning the candidate's qualifications.

The FPC or the Tenure Committee will submit one written evaluation encompassing the views of the committee members. The committee vote submitted to the Provost will be a number count only and shall not identify the person casting the vote. The members of the committee shall sign the evaluation indicating only that the document/evaluation is a fair representation of the views expressed by the committee during the deliberations on the promotion recommendation. The FPC or the Tenure Committee will make a specific favorable or unfavorable recommendation on whether the promotion should be granted. The Provost may meet with the FPC or the Tenure Committee to discuss its recommendation. The Provost shall inform the candidate as to whether the promotion recommendation from the FPC or the Tenure Committee was favorable or unfavorable.

Between March 1 & April 1, the Provost shall review the entire personnel file and all other relevant data and make a written recommendation on each promotion candidate to the President. The Provost shall also submit to the President the promotion recommendations of the School Personnel Committee and the Faculty Personnel Committee or the Tenure Committee for each candidate.

On or before May 1, the President of the University shall announce the final promotion decision.

Notification

A. A faculty member considered for promotion shall be notified without delay of the action taken by the SPC and, subsequently, of the action taken by the Faculty Personnel Committee or the Tenure Committee and the Provost.

B. When an adverse decision regarding promotion is taken at any of the procedural levels, reasons for the adverse decision must be given to the candidate in writing without delay.

Appeals

A. A faculty member who is denied promotion by the SPC may appeal to the Faculty Personnel Committee or the Tenure Committee.

B. A faculty member who is denied promotion by the Faculty Personnel Committee or the Tenure Committee, or whose appeal to the Faculty Personnel Committee or the Tenure Committee has been rejected, may appeal to the Provost.

C-6

For more detailed information regarding the University's policy regarding FMLA leave, as well as the University's policy regarding Short Term Disability (including Maternity), please see the Employee Handbook.

**2.5.5 Criteria**

In evaluating candidates for tenure (tenure track faculty) and for five and seven year contracts (renewable contract faculty), the personnel committees of the individual schools shall consider all of the following criteria to be essential. Criteria 1 and 2 are threshold requirements that must be met by all candidates. Candidates must also demonstrate satisfactory performance in both criteria 3 and 4, with excellence in at least one of the two.

**2.5.5.A Tenure**

**1. Credentials**

Academic credentials necessary for appointment to tenure may vary among the teaching units of the University. Persons appointed to tenure should have earned the highest degree awarded in the field of competence (generally, the Ph.D., Ed.D., J.D) from an accredited institution. However, exceptional achievement in academic or industrial performance (as measured by publications, professional accomplishments and recognition, unique qualifications or expertise) may be considered on a case-by-case basis as the appropriate equivalent of academic degrees.

**2. Teaching performance (Faculty approved classroom visitation policy on March 19, 1991). (See Appendix C.)**

Consistent high performance as a teacher and advisor to students is necessary for appointment for tenure. This may be measured by a variety of means, including peer evaluations, student evaluations, self-evaluations and evaluations by academic administrators. No one of these means is exclusively acceptable to fulfill this criterion.

**3. Professional Achievement**

Appointment to tenure requires evidence of a faculty member's achievement and continuing growth in his/her field of professional specialization. Such evidence includes: research and publication; presentation of papers at professional or industrial meetings. Such evidence may also include leadership in professional organizations; consulting; other concrete contributions to one's profession. Published research and juried exhibits (design faculty) demonstrating original contributions to the field will be major vehicles for evaluating tenure candidates. Professional achievement must be viewed not as a static accomplishment, but as a continuing process deemed likely to continue throughout a person's career and to result in growth, self-assessment, and renewal as a professional.

C-7

**4. Contributions to the University and School**

Persons appointed to tenure must demonstrate a continuing commitment to maintain and improve the intellectual and creative life of the institution. Such contributions include effective participation and leadership on committees of the school and the University, including involvement in program development; involvement in campus activities; representation of the University within association or other extra-collegiate forums.

**5. Tenure Process (Revised by faculty action May, 2005.) (See Appendix A for a detailed outline of procedures.)**

The Provost shall coordinate with the candidate and the school dean a list of potential assessors. Assessors shall be appointed by the Provost in consultation with the school dean. Assessors will be asked to review and, by September 15, submit a written evaluation of the candidate's professional (business/industry/scholarly/artistic) accomplishments to the Provost. Upon receipt, the Provost will then forward the evaluations to the school dean for inclusion in the candidate's dossier.

By May 1 (previous to the academic year in which the candidate will be considered for tenure) the candidate will submit a list of six (6) prospective assessors per candidate to the respective school dean. This list should not include assessors that may have a conflict of interest or bias toward the candidate (thesis advisors, personal friends, etc.). Additional names of assessors may be added to the list in consultation with the dean. By July 15 three (3) assessors for each candidate will be selected by the Provost in consultation with the school dean from the final list. By July 30 the selected assessors will be sent portfolios prepared by the candidate in coordination with the school dean. The portfolio will include the relevant portion of the dossiers documenting the candidate's professional (business/industry/scholarly/artistic) accomplishments.

The submission of the dossier to the school dean demonstrates that the candidate agrees and consents to allow all information contained in the dossier to become public knowledge. Failure on the part of the candidate to submit a dossier to the school dean by October 1 of the tenure consideration year may negatively prejudice that candidate's chances for tenure. The tenure process will continue whether or not all materials are submitted by October 1, and the candidate will be initially evaluated on whatever information is available as of that date.

**October 1 The Candidate**

A candidate for tenure shall submit a dossier to the school dean no later than October 1st of the academic year in which the candidate will be considered for tenure. The dossier should be reviewed with the program director before submission to the dean. Program directors referred to in this section are those with direct responsibility for full time faculty who are involved in teaching, research/practice and service. The dossier must contain the information required by Philadelphia University, as well as any other information the candidate deems important to tenure consideration. The following is a list of required information that must be submitted in the dossier:

C-8